[Cite as *State v. Light*, 2023-Ohio-1187.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## ASHTABULA COUNTY

| | |
|---|---|
| STATE OF OHIO, | **CASE NO. 2022-A-0055** |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the County Court, Eastern District |
| CHRISTOPHER E. LIGHT, | Trial Court No. 2020 CRB 00241 E |
| Defendant-Appellant. | |

**O P I N I O N**

Decided: April 10, 2023
Judgment: Affirmed in part, reversed in part, and remanded

*Colleen M. O'Toole*, Ashtabula County Prosecutor, and *Christopher R. Fortunato*, Assistant Prosecutor, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Mallorie Thomas*, Patituce & Associates, LLC, 16855 Foltz Industrial Parkway, Strongsville, OH 44149 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1} Defendant-appellant, Christopher E. Light, appeals from his conviction and sentence for Cruelty to Animals in the Ashtabula County Court, Eastern District. For the following reasons, we affirm in part and reverse in part and remand to the lower court for further proceedings consistent with this opinion.

{¶2} On June 10, 2020, complaints were filed in the Ashtabula County Court, Eastern District, charging Light with Cruelty to Animals, a misdemeanor of the second degree, in violation of R.C. 959.13(A)(1), and Domestic Violence, a misdemeanor of the

fourth degree, in violation of R.C. 2919.25(C).

{¶3} On December 13, 2021, Light filed a Request for Recusal of Judge, asserting that the judge "has information from a previous case that Defendant feels compromises his ability to have a fair trial."

{¶4} A jury trial was held on April 26, 2022. Prior to presentation of testimony, defense counsel renewed the motion for recusal based on Light's belief that "in the past, * * * there were some comments made that have been relayed to him, based on some previous issues [when the judge was a prosecutor], that you disliked Mr. Light." The court found that there was no basis for recusal and denied the motion. Defense counsel also moved that "no prior conduct come into this case as it's not relevant." The State argued that it needed to show evidence of prior bad acts to demonstrate why the victim would be fearful of Light to prove the element of "imminent fear of physical harm" on the Domestic Violence charge. The court found no evidence of prior bad acts could be presented.

{¶5} The following testimony was presented at trial:

{¶6} Brittany Light, Christopher Light's adult daughter, testified that on April 30, 2020, she was living with her parents and siblings. On that date, her father asked her to fill a bucket with bleach water and clean the kitchen floor. She explained that she filled the bucket with half of a small bottle of bleach and tap water from a sink that heats up very quickly. After Brittany began mopping, her puppy urinated on a cabinet and Light "took the bucket of scalding bleach hot water and poured it onto the dog." The water went in the dog's face and his eyes "were really red." The dog then came beside Brittany and crouched. She tried to remove the dog and Light began kicking it. The dog seemed scared at that time. She later flushed his eyes out and no further treatment was sought.

2

Brittany explained that although she usually takes the dog out to use the restroom in the morning, her father would not let her do so because he wanted her to clean the floor. She testified that her father was aware bleach was in the bucket of water because he told her to put it in the water.

{¶7} After the incident with the dog, Light began asking Brittany to pay rent and told her he would smack her in the face if she did not "stop being dumb." She had been in a dispute with her father about her car the day of the incident and told him if he did not return her car, she would call the police.

{¶8} Heather Light, Brittany's mother and Light's ex-wife, testified that on April 30, she called up to Brittany's room, requesting she take the dog outside. The dog urinated in his cage and Light instructed Brittany "to get the mop water" and clean. Heather watched Brittany prepare the bucket of water and could smell the bleach. She observed Light throw the water in the dog's face. She then saw Light kick the dog with force, moving it toward the kitchen. She testified that after the incident, Light tended to the dog and got clean water to pour on the dog. The dog had "fire red eyes" after the incident. She testified that Brittany and her father had a bad relationship and did not get along.

{¶9} Officer Ryan White, who was with the Jefferson Village Police Department at the time of the incident, responded to a call at the Light residence. He could smell the odor of bleach in the kitchen. He did not have contact with or view the dog.

{¶10} The jury found Light guilty of Cruelty to Animals and not guilty of Domestic Violence.

{¶11} At the June 10, 2022 sentencing hearing, the State argued that Light did not

3

show remorse and requested a jail term. Defense counsel argued that Light assisted the dog after the water was thrown on it. Light stated that the dog often growled and had tried to bite his children, denied kicking the dog, and contended that he did not know the water had bleach in it. The court sentenced Light to a 90-day suspended jail sentence, a five-year term of probation and ordered him to pay a $350 fine.

{¶12} Light timely appeals and raises the following assignments of error:

{¶13} "[1.] The trial court erred when it relied upon information outside of the record and failed to allow Mr. Light an opportunity to respond to this information before imposing his sentence, thus Mr. Light's sentence is contrary to law.

{¶14} "[2.] Mr. Light's conviction was against the manifest weight of the evidence.

{¶15} "[3.] The State engaged in prosecutorial misconduct throughout the course of the trial that deprived Mr. Light of his right to a fair trial under the Sixth and Fourteenth Amendment.

{¶16} "[4.] The State failed to present sufficient evidence to sustain a conviction.

{¶17} "[5.] The trial court erred when it refused to disqualify itself from Mr. Light's case when there was sufficient evidence presented that reasonably questioned the trial court's impartiality in violation of Mr. Light's right to Due Process under the Fourteenth Amendment."

{¶18} In his first assignment of error, Light argues that the trial court erred in sentencing when it considered evidence outside of the record and denied him the right to allocution.

{¶19} We will first address Light's argument that the court failed to allow him the right to allocute when it based its sentence on comments he made to court staff and

4

discussed these comments on the record only after Light was given a chance to speak.

**{¶20}** "Misdemeanor sentencing lies within the discretion of the trial court and will not be disturbed absent an abuse of discretion." *State v. Hogya*, 11th Dist. Lake Nos. 2022-L-058 and 2022-L-059, 2023-Ohio-342, ¶ 14. An abuse of discretion occurs when the trial court fails "to exercise sound, reasonable, and legal decision-making." *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting *Black's Law Dictionary* 11 (8th Ed.2004).

**{¶21}** Crim.R. 32(A)(1) requires that the trial court, at sentencing, "[a]fford counsel an opportunity to speak on behalf of the defendant and address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment." "The plain language of the rule imposes a mandatory duty upon the trial court to unambiguously address the defendant and provide him or her with the opportunity to speak before sentencing." *State v. Brown*, 166 Ohio App.3d 252, 2006-Ohio-1796, 850 N.E.2d 116, ¶ 8 (11th Dist.). "Trial courts must painstakingly adhere to Crim.R. 32, guaranteeing the right of allocution. A Crim.R. 32 inquiry is much more than an empty ritual: it represents a defendant's last opportunity to plead his case or express remorse." *State v. Green*, 90 Ohio St. 3d 352, 359-360, 738 N.E.2d 1208 (2000). "[J]udges should leave no room for doubt that the defendant has been issued a personal invitation to speak prior to sentencing." *Green v. United States*, 365 U.S. 301, 305, 81 S.Ct. 653, 5 L.Ed.2d 670 (1961). "The defendant's right to allocution applies equally to both felony and misdemeanor convictions." *Brown* at ¶ 8.

**{¶22}** "The right to allocution is both absolute and not subject to waiver due to a defendant's failure to object." *Id.*, citing *State v. Campbell,* 90 Ohio St.3d 320, 325-326,

5

738 N.E.2d 1178 (2000). "When a trial court imposes sentence without first asking the defendant whether he or she has anything to say in his or her defense, the judgment of sentence shall be reversed and the cause shall be remanded for resentencing, unless the error is invited or harmless." *Id.*

{¶23} In the present matter, there is no question that Light was initially given the right to speak at the sentencing hearing. The issue here is whether he should have been permitted or invited to speak after the court introduced additional evidence into the record. At the conclusion of the sentencing hearing, after both sides had been given an opportunity to present argument and Light had spoken, the court stated:

> You know, you deny in your present - - and don't - - don't speak up, ok? You deny any culpability in this - - in this PSI. You blame it on other people's mental problems. You came to this court at some point and told my chief executive that you were going to appeal because the jurors were morons. You just absolutely refuse to take any responsibilities for this at all. And I don't believe that a capful of bleach would have caused the red eyes on that puppy * * * that you say that was only in there.

The court then took a break to "check something" and returned stating that Light deserved to go to jail but could not due to limited space, and proceeded to state the sentence.

{¶24} As this court has held "the interest that is protected by the right to allocution is the opportunity for the defendant to address the court directly on his own behalf *after* all the information on which the sentencing court relies when pronouncing sentence has been presented." (Emphasis sic.) *Brown* at ¶ 13. "Whatever the court considers for sentencing should be either part of the presentence investigation or 'presented' at the sentencing hearing before allocution." *State v. Yates*, 195 Ohio App.3d 33, 2011-Ohio-3619, 958 N.E.2d 640, ¶ 25 (2d Dist.).

{¶25} In support of his argument that Light should have been given the right to

6

respond to the court's assertion that he had called the jurors "morons," he cites to *State v. Fowler*, 6th Dist. Ottawa No. OT-21-031, 2022-Ohio-3499. In *Fowler*, the defendant was permitted to give a statement at his sentencing hearing for vehicular homicide. *Id.* at ¶ 6. The court then stated its consideration of the applicable sentencing factors and observed that his wife told him she could hear the defendant's motorcycle at the time of the accident and could tell by how quickly it was moving that there would be an accident. The judge then proceeded to order the sentence. The defendant was not given an opportunity to respond after the judge's recitation of this information. *Id.* at ¶ 8-9. The Sixth District held that the trial court "violated Fowler's right of allocution by sentencing him without giving him or his attorney an opportunity to respond to the new information that the trial judge introduced at sentencing." *Id.* at ¶ 16. It further observed that "[w]hen the court (as opposed to the state or a third party) introduces the new information, there is a higher likelihood that the court actually considered the new information in arriving at its sentence, and, consequently, a higher likelihood of prejudice to the defendant." *Id.* at ¶ 17.

{¶26} Similarly, in *Yates*, 2011-Ohio-3619, the defendant spoke prior to the judge discussing a bondsperson report that indicated the defendant had been transporting drugs while on bond and then concluding that the defendant had been lying in its statement to the court. It then sentenced the defendant. *Id.* at ¶ 5. The appellate court, finding the record unclear as to whether the defendant had the opportunity to review the report, reversed the defendant's sentence for the trial court to determine if the defendant was aware of the report and, if not, to give the defendant an opportunity to respond to the bond report information before resentencing. *Id.* at ¶ 26.

7

{¶27} Likewise, in the present matter, the court made a statement that was not otherwise part of the record at the sentencing hearing. It was new information presented by the court after Light had been given the opportunity to speak and immediately prior to stating Light's sentence. Light was not presented with the opportunity to refute that he made such statement or respond to it, although it was clearly relied upon by the court in reaching its sentence. These facts result in prejudice to the defendant. *State v. Sanders*, 8th Dist. Cuyahoga No. 81450, 2003-Ohio-1163, ¶ 16 ("[t]he conclusion that [the defendant] was prejudiced is not based on the premise that he was not allowed to speak, but on the premise that he was not allowed to speak *at the appropriate time* because evidence was introduced and considered *after* he was purportedly granted his right of allocution").

{¶28} In *Fowler*, the court also observed that such error did not constitute harmless error because, although Fowler did not object, it was evident that the court relied on the information in reaching its sentence. 2022-Ohio-3499, at ¶ 20. In the present matter, although counsel did not object to the court's introduction of new information, this statement was made in conjunction with the court's sentence and was part of its rationale for his refusal to take responsibility for committing the crime. Further, we observe that once the court began discussing its finding on Light's lack of remorse, the court stated: "don't speak up." It then immediately stated the information from the court staff and the sentence. Ordering that he should not speak up only two sentences before stating the new information almost certainly deterred an objection by Light. As has been emphasized, courts must "painstakingly adhere" to the right to allocution. *Green*, 90 Ohio St. 3d at 359, 738 N.E.2d 1208. As *Green* held, a court errs "in not explicitly asking [an

8

offender], in an inquiry directed only to him, whether he had anything to say before he was sentenced." *Id.* Consistent with this analysis, and as the *Fowler* and *Yates* holdings support, it would be reasonable to conclude that in circumstances where the court presents new information, it should do so prior to allocution or, at least, provide the defendant a clear opportunity to respond to such allegations, rather than proceeding to immediately issue a sentence. Under these circumstances, we find that Light should have been given an opportunity to address the allegation raised by the court.

{¶29} Following the rationale of *Yates*, and its holding that "[w]hatever the court considers for sentencing should be either part of the presentence investigation or 'presented' at the sentencing hearing before allocution," creates a clear, brightline standard. *See Yates*, 195 Ohio App.3d 33, 2011-Ohio-3619, 958 N.E.2d 640, at ¶ 25. Under this standard, there is no question that a defendant is provided the opportunity to respond to all of the evidence. If a court may present new evidence at any time, including during its final statement of the defendant's sentence, it creates a lack of clarity about when and whether a defendant can respond. Such a conclusion is consistent with the general principles of allocution that a court shall ask a defendant to allocute rather than require the defendant to assert such right.

{¶30} The State argues that *Fowler* is distinguishable. First, it observes that in *Fowler* the defendant entered a plea while here there was a trial. This is a distinction without difference. Whether a defendant is found guilty after a plea or a trial does not impact whether he has the right to allocution after all evidence is presented at the sentencing hearing. The State also argues that the present circumstances are "so dissimilar from a judge relying on a comment from his wife in pronouncing a sentence"

9

because the court here "simply made a comment told to it by his court executive that the Appellant called the jury moronic." It is unclear what the State means by the court "simply making a comment." The trial court introduced evidence into the sentencing record that was not otherwise present in the record and stated that evidence as part of its rationale for sentencing, just as did the court in *Fowler*. The specific content of the evidence is insignificant; the legal principle is the same: the judge made a statement of a fact not in the record and proceeded to sentencing without allowing the defendant to respond.

{¶31} For these reasons, we reverse Light's sentence and remand for resentencing to be conducted consistent with the principles of allocution discussed above. *Fowler* at ¶ 21; *Brown*, 2006-Ohio-1796, at ¶ 8. As Light's sentence has been reversed, we decline to address his additional arguments relating to evidence presented at the sentencing hearing.

{¶32} The first assignment of error is with merit.

{¶33} We will consider the second and fourth assignments of error jointly since they deal with the interrelated issues of the weight and sufficiency of the evidence.

{¶34} A challenge to the sufficiency of the evidence raises the issue of "whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, 108 N.E.3d 1, ¶ 165. In reviewing the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶35} In contrast to sufficiency, "weight of the evidence addresses the evidence's

effect of inducing belief." (Citation omitted.) *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. An appellate court must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Citation omitted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶36} To convict Light of Cruelty to Animals, the State was required to prove, beyond a reasonable doubt, that he did, "[t]orture an animal, deprive one of necessary sustenance, unnecessarily or cruelly beat, needlessly mutilate or kill, or impound or confine an animal without supplying it during such confinement with a sufficient quantity of good wholesome food and water." R.C. 959.13(A)(1). "'Cruelty,' 'torment,' and 'torture' include every act, omission, or neglect by which unnecessary or unjustifiable pain or suffering is caused, permitted, or allowed to continue, when there is a reasonable remedy or relief." R.C. 1717.01(B). *See State v. Howell*, 137 Ohio App.3d 804, 817, 39 N.E.2d 1219 (11th Dist.2000) (the definitions found in R.C. 1717.01(B) apply to prosecutions under R.C. 959.13). "[A]lthough R.C. 959.13 does not specify a degree of culpability, the requisite *mens rea* to sustain a conviction pursuant to R.C. 959.13(A)(1) is recklessness." *State v. Wright*, 11th Dist. Portage No. 2000-P-0128, 2002 WL 480328, *2 (Mar. 29, 2002). "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C).

{¶37} In relation to the manifest weight of the evidence, Light takes issue with conflicting testimony provided by Brittany and Heather. He contends they gave differing

11

descriptions of the events on April 30. There is no question that the women did not give identical versions of the events and their testimony differed as to certain events, such as who asked Brittany to come downstairs, whether Brittany was asked to let the dog out before cleaning, and whether Light attended to the dog after throwing the water. We emphasize that "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986). "Since the jury is in the best position to assess credibility, we generally decline to second guess its credibility determinations." *State v. Tiggett*, 11th Dist. Trumbull No. 2018-T-0036, 2019-Ohio-1715, ¶ 34.

{¶38} Further, we emphasize that the two women generally gave consistent testimony as to those details establishing Light's conduct in relation to the dog, the pertinent issue here. They both testified that there was bleach in the water and that Light threw it in the dog's face, causing redness to the dog's eyes. They also both testified that Light kicked the dog. Differences in the testimony, such as whether the dog was to be taken out prior to cleaning, whether the dog crate had a black base, or the circumstances surrounding the decision to purchase the dog are of little significance to the acts taken to harm the animal. These minor variances in the witnesses' testimony, which are primarily irrelevant to the offense itself, do not render either of the women's testimony incredible or the convictions against the weight of the evidence. *See State v. Kaufman*, 187 Ohio App.3d 50, 2010-Ohio-1536, 931 N.E.2d 143, ¶ 81-83 (7th Dist.) (where the witness gave some inconsistent testimony on facts such as the precise location of the crime, but "otherwise gave detailed testimony about all of the events pertinent to the case and

12

provided consistent testimony as to the facts that satisfied the elements of the offenses charged," the defendant was not entitled to reversal on manifest weight grounds).

{¶39} Light argues that it is "clear [his daughter] has a vendetta" against him, based on their difficult relationship. As explained above, however, each of the details necessary to demonstrate cruelty to animals, including the throwing of the water with bleach on the dog, the kicking of the dog, and the condition of the dog after the incident, were also corroborated by Light's ex-wife.

{¶40} In his sufficiency argument as well as his weight of the evidence argument, Light asserts there was a lack of evidence that harm or suffering were caused to the dog. First, Light argues that Officer White, who responded to the home, did not observe or interact with the dog and could not testify whether harm occurred to him and no veterinarian observed harm to the dog. While it may have been beneficial for Officer White to observe the dog, there were two witnesses who testified as to the impact of the water being thrown on the dog, which is sufficient to establish this element of the crime. The strength of the police investigation does not negate the witness testimony about the events that occurred and the impact on the dog. Further, the statute does not require that an animal suffer observable or permanent harm or be treated for injuries.

{¶41} R.C. 959.13(A)(1) requires that the defendant's act causes "unnecessary or unjustifiable pain or suffering." Here, there was ample testimony as to both the acts committed, which included dumping hot bleachy water in the area of the dog's eyes, and kicking him with force. The witnesses observed visible redness to the dog's eyes. Both kicking with force and putting water with bleach in a dog's eyes necessarily result in pain.

13

Case No. 2022-A-0055

{¶42} Light contends there was no testimony presented about any pain suffered by the dog. Apart from the fact that it is more difficult to establish pain in an animal who cannot speak, the record was not devoid of proof as to the suffering incurred by the dog. Testimony was presented that after Light's actions, the dog appeared scared and crouched beside Brittany. This can be coupled with the jury's reasonable inference that if a dog is kicked with force and is hit with hot water combined with bleach that causes his eyes to turn red, he experienced the pain or suffering required to prove cruelty and/or torture of an animal.

{¶43} Based on the foregoing, we find that the conviction for Cruelty to Animals was supported by the weight and sufficiency of the evidence. Witness testimony established actions by Light that constituted cruelty or torture as statutorily defined which led to unnecessary or unjustifiable pain or suffering to the dog.

{¶44} The second and fourth assignments of error are without merit.

{¶45} In his third assignment of error, Light argues that the State engaged in prosecutorial misconduct by asking questions and making comments relating to prior bad acts.

{¶46} To address allegations of prosecutorial misconduct we "must determine (1) whether the prosecutor's conduct was improper and (2) if so, whether it prejudicially affected [the defendant's] substantial rights." *State v. LaMar,* 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 121. "The touchstone of the analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *State v. Garrett*, __ Ohio St.3d, 2022-Ohio-4218, __ N.E.3d __, ¶ 144, citing *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). Thus, "prosecutorial misconduct alone does not require a new trial"

14

and "[t]he conduct of a prosecuting attorney during trial cannot be made a ground of error *unless* the conduct deprives defendant of a fair trial." *State v. Hamad*, 11th Dist. Trumbull No. 2017-T-0108, 2019-Ohio-2664, ¶ 123; *State v. Apanovitch*, 33 Ohio St.3d 19, 24, 514 N.E.2d 394 (1987).

**{¶47}** Initially, Light emphasizes that the prosecutor sought to admit evidence of "prior bad acts" to establish Brittany's fear of Light, which the court denied and prohibited. Pursuant to Evid.R. 404(B)(1) and (2), "[e]vidence of any other crime, wrong or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," although it is permissible for another purpose such as "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." There can be no question that the prosecution's request to utilize prior bad acts evidence does not impact the conviction here since such evidence was not introduced and it was prohibited.

**{¶48}** Light contends that the foregoing evidences the State's intention to attempt to introduce bad acts evidence throughout the trial and points to several questions he believes were inappropriate. During Heather's testimony, the State inquired, in relation to rules established by Light within the house: "And if you didn't live by his rules, what would happen?", to which an objection was sustained. The State subsequently inquired about Brittany and Light's relationship, to which Heather responded that "they do not get along." The State inquired: "what between the two of them indicated to you that they did not get along?" Heather responded: "there was a lot of abuse in our household." The court sustained the objection made after her response. The State then inquired about the subject matter of arguments between Brittany and Light, to which Heather responded that

15

they "didn't get along because of stuff from our past."  The court sustained the objection to that question and asked that the State move to another subject.  Finally, the State inquired whether Heather and Light's marriage had been "rocky," to which an objection was sustained.  A sidebar was then held which is not part of the record.

{¶49}  Questions regarding Brittany, Heather, and Light's relationships, while they may be of limited value, were not questions inquiring as to prior acts committed by Light. To the extent that Light appears to believe the prosecutor purposely attempted to avoid the court's ruling on prior acts evidence, these questions did not reference prior acts or prove Light's actions in this instance were in conformance with past acts.  We recognize that the State's questions relating to Brittany and Light's relationship appeared to be included in order to demonstrate that Brittany "believe[d] that the offender will cause imminent physical harm" for the purposes of Domestic Violence under R.C. 2919.25(C) and do not appear to be part of a calculated attempt to bring in specific inadmissible bad acts as Light implies.

{¶50}  As to the question about the consequences of failing to follow Light's rules, it also did not elicit a response about a prior act.  It should be observed that a similar question was asked to Brittany, with no objection by counsel or on appeal, where she responded that failure to do so resulted in statements that she would be kicked out of the house, not any particular act that would reflect on whether he committed abuse in this matter.

{¶51}  Nonetheless, even presuming the foregoing questions were improper, these questions were objected to and the objections were sustained.  The trial court instructed the jury that it was not to speculate on why objections were sustained or what

16

the answers may have been. There is a presumption "that the jury has followed the instructions given to it by the trial court." *State v. Murphy*, 65 Ohio St.3d 554, 584, 605 N.E.2d 884 (1992). The fact that the objections were sustained limited any alleged prejudicial effect. *See LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, at ¶ 149 (where a prosecutor asked several "improper questions" but the court "sustained numerous objections by defense counsel," reversal was unwarranted because the record did not indicate the outcome of the trial was affected by the questions); *State v. Treesh*, 90 Ohio St.3d 460, 468, 739 N.E.2d 749 (2001) (where the prosecutor made a "few improper statements" during closing argument, prejudice did not occur since they did not "permeate the state's argument so as to deny" defendant a fair trial and the trial court sustained each objection to the statements).

{¶52} We recognize that while the State did not inquire about a specific act of abuse, Heather did respond to the question about the parties' relationship by stating that there had been abuse in the home. This statement was not specifically stricken from the record, although the court sustained an objection following Heather's response. To the extent that the jurors may have considered that statement, we do not find that it resulted in prejudice.

{¶53} The foregoing question was asked in relation to Brittany's relationship with her father. This question was directed toward the Domestic Violence charge and whether Brittany believed harm would result from Light's threat to hit her. As the State argued prior to trial, it attempted to advance questioning that would help demonstrate how Brittany perceived his threat. Nonetheless, even with the statement of prior abuse made by Heather, the jury still acquitted Light of Domestic Violence. *See State v. Cantrill*, 6th

17

Dist. Lucas No. L-18-1047, 2020-Ohio-1235, ¶ 61 (finding that no prejudice existed where a statement of a defendant's prior offense was improperly admitted but the defendant was acquitted on the related offense since the disclosure "fail[ed] to result in a conviction" of the charge for which it was presented).

{¶54} Finally, Light argues that the prosecutor made prejudicial statements in closing arguments: "we've got to realize there were other things that happened before that would cause most people to feel fear." In context, this statement was made to argue that Brittany believed that Light was going to hit her. For the reasons discussed above, including the acquittal for Domestic Violence, we do not find prejudice resulted from this comment.

{¶55} The third assignment of error is without merit.

{¶56} In his fifth assignment of error, Light argues that the trial court erred in failing to rule on his motion for recusal and in denying his renewed motion for recusal, emphasizing that a judge must disqualify himself if his impartiality can be questioned. He contends that the judge, when he was a prosecutor, made statements about Light which showed bias.

{¶57} "If a judge of a municipal or county court allegedly is interested in a proceeding pending before the judge, allegedly is related to or has a bias or prejudice for or against a party to a proceeding pending before the judge or to a party's counsel, or allegedly otherwise is disqualified to preside in a proceeding pending before the judge, any party to the proceeding or the party's counsel may file an affidavit of disqualification with the clerk of the supreme court." R.C. 2701.031.

{¶58} Courts in Ohio have consistently determined that the appropriate means to

18

assert bias or prejudice against municipal, county, and common pleas court judges is through pursuing an affidavit of disqualification with the Ohio Supreme Court. *State v. Bradley-Lewis*, 11th Dist. Ashtabula No. 2018-A-0006, et al., 2018-Ohio-1445, ¶ 13 ("a court of appeals has no authority to render a decision regarding the disqualification of a municipal court judge"); *State v. Guildoo*, 7th Dist. Mahoning No. 20 MA 0124, 2021-Ohio-4553, ¶ 47 (a defendant must follow the procedure under R.C. 2701.031 to pursue a claim that a municipal court judge is biased or prejudiced); *State v. Fowler*, 6th Dist. Ottawa No. OT-21-031, 2022-Ohio-3499, ¶ 25, fn. 4 (the remedy for a litigant claiming bias is to file an affidavit of disqualification in the Supreme Court). The Supreme Court has held that a court of appeals "lacks jurisdiction to review" a trial court's denial of a motion to recuse him or herself. *State ex rel. Hough v. Saffold*, 131 Ohio St.3d 54, 2012-Ohio-28, 960 N.E.2d 451, ¶ 2, citing *Beer v. Griffith*, 54 Ohio St.2d 440, 441-442, 377 N.E.2d 775 ("[s]ince only the Chief Justice or his designee may hear disqualification matters, the Court of Appeals was without authority to pass upon disqualification or to void the judgment of the trial court upon that basis").

{¶59} Here, Light did not follow the process under R.C. 2701.031 to seek disqualification of the trial court judge through filing an affidavit in the Supreme Court. Even presuming this court could properly consider whether disqualification was warranted, we do not have the ability to do so based on the record below. The process set forth in R.C. 2701.031 allows the party to file an affidavit relating to the alleged grounds for disqualification for the purpose of creating a sworn statement on which to decide these issues. Here, all that is present in the record are unsworn allegations in a motion that Light's ex-wife represented to Light that the judge had made disparaging

19

comments about him when the judge was a prosecutor. These are not sufficient to determine bias. While Light also contends that the trial court stated an additional, errant basis for denying the motion, that the matter was being heard before the jury, this alternate ground need not be considered. The record does not support a finding of bias and thus, reversal is unwarranted.

{¶60} The fifth assignment of error is without merit.

{¶61} For the foregoing reasons, we affirm Light's conviction for Cruelty to Animals in the Ashtabula County Court, Eastern District, reverse his sentence, and remand to the lower court for resentencing and further proceedings consistent with this opinion. Costs to be taxed against the parties equally.


JOHN J. EKLUND, P.J., concurs,

EUGENE A. LUCCI, J., concurs in part, dissents in part, with a Dissenting Opinion.


_____


EUGENE A. LUCCI, J., concurs in part, dissents in part, with a Dissenting Opinion.

{¶62} While I concur with the majority opinion on the disposition of appellant's second, third, and fourth assignments of error, I dissent to its disposition regarding the first assigned error. The majority contends the trial court erred to appellant's prejudice by failing to afford him the opportunity to respond at sentencing to the trial court's statement that appellant referred to the jurors as "morons" when speaking with the court's chief executive. I would hold that because (1) nothing suggests the trial court relied upon

20

appellant's alleged statement in fashioning a sentence, (2) neither appellant nor defense counsel objected, *and* (3) appellant received probation with all jail-time suspended, any conceivable error was harmless and certainly does not rise to plain error.

{¶63} I recognize that "[a] trial court errs when it does not let the defendant address new information introduced and considered by the trial court at sentencing." (Citation omitted.) *State v. Yates*, 195 Ohio App.3d 33, 2011-Ohio-3619, 958 N.E.2d 640, ¶ 21 (2d Dist.). Such an error, however, does not rise to the level of a presumptive, prejudicial error. Although certain courts have noted that "[t]he error is presumed prejudicial, because the defendant is prevented from speaking at the appropriate time[,]" this proposition requires context. *Id.*, citing *State v. Sanders*, 8th Dist. Cuyahoga No. 81450, 2003-Ohio-1163, ¶ 13-16.

{¶64} In *Sanders*, the source of the Second District's proposition in *Yates*, the Eighth Appellate District was faced with a situation where a defendant was being resentenced. Although the defendant was afforded his allocution rights eight months earlier, he was not given the same opportunity prior to resentencing. And the trial court considered new evidence at the resentencing hearing. The Eighth District emphasized that a trial judge should "'painstakingly'" guard a defendant's allocution right as it "'represents a defendant's last opportunity to plead his case or express remorse.'" *Id.* at ¶ 13, quoting *State v. Green*, 90 Ohio St.3d 352, 359-360, 738 N.E.2d 1208 (2000). The Eighth District concluded the defendant's right to allocution was violated in that case, adding: "the failure to grant allocution should be presumed prejudicial unless shown harmless and, regardless of the standard applied here, the error cannot be found harmless because [the defendant] was denied the opportunity to address evidence

21

introduced and considered after [the previous hearing eight months earlier.]" *Sanders* at ¶ 13.

{¶65} *Sanders* advises an appellate court to *presume* prejudice, save harmless error. If a reviewing court, per *Sanders*, presumes prejudice but for harmless error, the presumption is clearly rebuttable. To this point, the court in *Yates* observed that "the prejudice presumption [is] rebutted when the defendant declined to speak at the proper time or the new evidence is extraneous." *Yates* at ¶ 22, citing *State v. Storey*, 8th Dist. Cuyahoga No. 87030, 2006-Ohio-3498, ¶ 40. Further, the error cannot be plain (and will be harmless) if the court's basis for an enhanced sentence is unrelated to it. *Yates* at ¶ 22, citing *State v. Crawford*, 3d Dist. Crawford Nos. 3-05-14, 3-05-20, 2006-Ohio-1421, ¶ 7.

{¶66} The majority maintains the trial court's statement referencing evidence not in the record, without allowing appellant the opportunity to respond, formed the basis of its sentence and was therefore presumptively prejudicial and the presumption went unrebutted. I cannot agree.

{¶67} During the sentencing hearing, the state emphasized that its primary concern with appellant's behavior was his lack of understanding that he did anything wrong. The prosecutor observed that this attitude was reflected at trial and in the presentence investigation. The prosecutor underscored that appellant appeared to have no insight into the problematic actions that led to his conviction. And his comportment demonstrated the lack of any ability to reflect on his conduct and take personal responsibility.

22

Case No. 2022-A-0055

{¶68} Defense counsel made statements in mitigation and then appellant was afforded his right to allocution. Despite the prosecutor's concentration on appellant's lack of remorse and failure to take responsibility, appellant, during allocution, continued to shift blame and deny culpability. Thereafter, the trial court stated:

> You know, you deny in your present - - and don't - - don't speak up; okay? You deny any culpability in this - - in this PSI. You blame it on other people's mental problems. You came to this court at some point and told my chief executive that you were going to appeal because the jurors were morons. You just absolutely refuse to take any responsibility for this at all.

{¶69} While the trial court did say "don't speak up," given the context (immediately after appellant exercised his allocution right), it would seem the trial court's advisement reflected a concern that appellant was about to interrupt. This statement did not foreclose an objection *after* the trial court made its statement. Neither counsel, nor appellant objected or sought to make further comment on this issue. The failure to object rebuts any arguable presumption of prejudice. As such, appellant was required to establish prejudice — a burden, on these facts, he did not and could not meet.

{¶70} The trial court's sentence was premised upon appellant's lack of remorse and lack of accountability. In this respect, the new information was merely cumulative of the substantive basis for the sentence, which involved a fully suspended jail sentence and a fine. In short, there is no evidence that appellant's alleged statement regarding the jurors impacted the sentence.

{¶71} Further, if the court had sua sponte given appellant an opportunity to respond to the new information, he would have admitted it or denied it. If he admitted he called the jurors morons, the court could have utilized the information. If he denied it, the court could have held a hearing wherein his chief executive could testify regarding what

23

appellant allegedly stated. If appellant continued to deny the statement, the court could nevertheless believe the witness and utilize the same as a basis for its original observations that appellant completely lacks any sense of responsibility for his actions.

{¶72} With the foregoing in mind, Crim.R. 52(A), which governs the criminal appeal of a non-forfeited error, provides that "[a]ny *error* \* \* \* which does not *affect substantial rights* shall be disregarded." (Emphasis added.) Thus, Crim.R. 52(A) sets forth two requirements that must be satisfied before a reviewing court may correct an alleged error. First, the reviewing court must determine whether there was an "error," i.e., a "[d]eviation from a legal rule." *United States v. Olano*, 507 U.S. 725, 732-733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Second, the reviewing court must engage in a specific analysis of the record to determine whether the error "affect[ed] substantial rights" of the criminal defendant. *Id*. at 734.

{¶73} Crim.R. 52(B) governs errors to which appellant has forfeited argument due to his failure to object. That rule provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

{¶74} In *United States. v. Dominguez Benitez*, 542 U.S. 74, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004), the Court defined the prejudice prong of the *plain error* analysis, stating:

> It is only for certain structural errors undermining the fairness of a criminal proceeding as a *whole that even preserved error* requires reversal without regard to the mistake's effect on the proceeding. *See Arizona v. Fulminante,* 499 U.S. 279, 309-310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). \* \* \*
>
> Otherwise, relief for error is tied in some way to prejudicial effect, and the standard phrased as "'error that affects

24

substantial rights,'" used in Rule 52, has previously been taken to mean error with a prejudicial effect on the outcome of a judicial proceeding. *See Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). To affect "substantial rights," * * * error must have "substantial and injurious effect or influence in determining the * * * verdict [or outcome]." *Kotteakos* [at] 776. (Emphasis added.)

*Dominguez Benitez* at 81. *See also State v. Barnes*, 94 Ohio St.3d 21, 759 N.E.2d 1240 (2002).

{¶75} The Court continued: "In cases where the burden of demonstrating prejudice (or materiality) is on the defendant seeking relief, we have invoked a standard with similarities to the *Kotteakos* formulation in requiring the showing of 'a reasonable probability that, but for [the error claimed], the result of the proceeding would have been different.'" *Dominguez Benitez* at 81-82, quoting *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

{¶76} Here, appellant was placed on probation for five years and all jail time was suspended. Under the circumstances, especially where 90-days of jail time was possible, it is difficult to imagine a more favorable sentence in light of appellant's conviction and the uncontested lack of culpability he exhibited during trial, in the presentence investigation report, and at sentencing.

{¶77} Even if the trial court erred, whether we employ a harmless-error analysis (even though appellant did not object) or a plain-error analysis, any error in not allowing appellant to respond to the court's statement was non-prejudicial. "The defendant has the burden of showing prejudice from the trial court's [alleged] allocution error in order to compel resentencing." *State v. Brockington*, 6th Dist. Sandusky No. S-18-035, 2019-

25

Ohio-1812, ¶ 10, citing *State v. Reynolds*, 80 Ohio St.3d 670, 684, 687 N.E.2d 1358 (1998). Appellant has failed to do so.

{¶78} I therefore respectfully dissent to the majority's resolution of appellant's first assignment of error, and would affirm the trial court on all claims of error.

Case No. 2022-A-0055