[Cite as *In re C.S.*, 2023-Ohio-3754.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
JACKSON COUNTY

IN THE MATTER OF:                    :

              C.S.,                  :   CASE
NO. 23CA12

              Adjudicated Neglected    :
              and Dependent Child.
                 DECISION & JUDGMENT
              ENTRY
                                     :

_____

APPEARANCES:

Steven H. Eckstein, Washington Court House, Ohio, for Appellant.

Dana E. Gilliland, Jackson, Ohio, for Appellee.

_____
CIVIL CASE FROM COMMON PLEAS COURT, JUVENILE DIVISION
DATE JOURNALIZED:10-6-23
ABELE, J.

{¶1} This is an appeal from a Jackson County Common Pleas Court, Juvenile Division, judgment that granted Jackson County Job and Family Services, appellee herein, permanent custody of four-year-old C.S.

{¶2} Appellant, the child's biological mother, raises the following assignment of error:

> "THE TRIAL COURT ERRED IN DENYING THE
> MOTHER-APPELLANT'S MOTION FOR

DISQUALIFICATION THEREBY DENYING HER THE DUE
PROCESS RIGHTS REQUIRED UNDER THE UNITED
STATES AND OHIO CONSTITUTIONS."

{¶3} On December 8, 2021, appellee filed a complaint that alleged C.S. is an abused, neglected, and dependent child and requested temporary custody. The complaint alleged that on October 4, 2021, appellee received a referral that appellant had been using drugs. The next day, a caseworker visited appellant's home and found it to be in disarray. On appellant's bed appeared "a plate with a white powdery substance crushed up in a line and a tube on it." Appellant stated "that the powder was her Suboxone/Subutex and she was getting ready to take it when" the caseworker arrived.

{¶4} The caseworker contacted the Wellston Police Department to report that she had discovered a white, powdery substance inside appellant's home. Police investigated and charged appellant with drug possession and drug-paraphernalia possession. Appellant agreed to place the child with appellant's mother pursuant to a safety plan. About one month later, appellant asked appellee to place the child with the child's father. Appellee later approved the father as a placement for the child.

{¶5} On December 5, 2021, the father notified a caseworker

that appellant had removed the child from his home. Caseworkers could not locate appellant, but she did return the child to the father. On January 3, 2022, appellee filed a motion for a temporary-custody predispositional order. Appellee asserted that the father allowed appellant to remove the child from his care and the parents are avoiding contact with the agency caseworkers. The court subsequently entered an emergency, interim order that placed the child in appellee's temporary custody.

{¶6} On February 1, 2022, the trial court adjudicated the child a neglected and dependent child and continued temporary custody.[1] Approximately one month later, the court entered a dispositional order that placed the child in appellee's temporary custody.

{¶7} On January 3, 2023, appellee requested the court modify the disposition to permanent custody. Appellee alleged that the child has been in its permanent custody for 12 or more months of a consecutive 22-month period, the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, and permanent custody is in the

---

[1] Appellee agreed to dismiss the abuse allegation.

child's best interest.

{¶8} On April 21, 2023, the trial court held a hearing to consider appellee's permanent-custody motion. At the start of the hearing, the father's counsel indicated that the father recently realized that the judge previously represented the father in a 2015 criminal case and appellant in a 2019 case. The father thus asked the judge to recuse himself and to request another judge be appointed.

{¶9} The judge explained that he did not recall representing either parent, but he did check the records after the father's counsel raised the issue and confirmed that he had represented the father in a 2014 case and appellant in a 2019 case. The judge then allowed the parties to address the matter.

{¶10} Appellee's counsel pointed out that to disqualify a judge, a party must file a disqualification affidavit with the Ohio Supreme Court at least seven days before the proceeding. Appellee noted that the father did not file a disqualification affidavit. Appellee further argued that, even if the court considered the issue, the father could have raised the issue at an earlier point in the proceedings. Appellee also argued that the previous cases are not relevant to the permanent-custody

5

proceedings.

{¶11} Appellant's counsel stated that appellant joined in the father's disqualification request on the basis of the appearance of impropriety. Counsel indicated that appellant's "main concern would be that you'd have some knowledge of her former, like prior to this case, uh, that could be negative in your mind."

{¶12} The trial court then discussed Jud.Cond.R. 2.11 on the record and explained its reasoning process. The court stated that it did not recall the facts of the earlier cases and, after a review of the entire rule, the court indicated it did not believe that it would be unable to act without bias or prejudice. The court stated that it has been, and would continue to be, impartial. Thus, the court found no basis for recusal.

{¶13} The trial court then recited the case history and asked appellee's counsel whether she was prepared to proceed with the permanent-custody hearing. Appellee's counsel responded affirmatively, and further stated that the court must decide the permanent-custody motion within 120 days of its filing (January 3, 2023) and 12 days remain. Counsel also pointed out that neither father nor appellant asked for a

continuance with respect to the disqualification motions. At that point, the judge interjected and asked both the father's and appellant's counsel whether either wished "to request a continuance, on behalf of your client based on the issue of disqualification." The parents' counsel stated that they did not. The court thus proceeded with the permanent-custody hearing.

{¶14} The evidence adduced at the hearing shows that both parents are incarcerated and neither will be available to care for the child for several years. Moreover, the child currently resides with a foster family who meets all of his needs. The foster parents also intend to adopt if the court grants appellee permanent custody.

{¶15} On April 28, 2023, the trial court granted appellee's motion for permanent custody of the child. In its decision, the court noted that both parents had requested the trial-court judge to recuse himself because he previously had represented the parents in separate criminal proceedings. The court observed that it had considered Jud.Cond.R. 2.11 and discussed the matter on the record with the parties and their counsel, but it "could not identify any applicable grounds for recusal, after consideration of each section of the rule with opportunity for

all parties to be heard on the issue of recusal." The court further pointed out that none of the parties sought to use evidence from previous cases during the permanent-custody hearing. The court thus denied the parents' recusal request.

{¶16} The trial court found that the child has been in appellee's temporary custody for 12 or more months of a consecutive 22-month period. The court further noted that the mother recently entered guilty pleas to two counts of conspiracy to commit murder and that the father entered guilty pleas to two counts of voluntary manslaughter. The court reported that, at the time of its decision, the parents had yet to be sentenced and are facing, at a minimum, three years in prison.

{¶17} The trial court also determined that placing the child in appellee's permanent custody is in the child's best interest. The court noted that the foster parents meet all of the child's needs and are interested in adopting the child. The court thus granted appellee permanent custody of the child. This appeal followed.

{¶18} In her sole assignment of error, appellant asserts that the trial court erred by denying her disqualification motion. She contends that the trial judge's refusal to recuse deprived her of her due-process rights under the state and

federal constitutions.  Appellant further claims that the court structurally erred by applying the wrong legal standard when evaluating her disqualification motion.  She alleges that "the trial court applied an actual conflict standard to her motion to disqualify instead of an intolerable probability of actual bias."

{¶19} Appellant recognizes that litigants seeking to disqualify a judge must file a disqualification affidavit with the Ohio Supreme Court, and further acknowledges that intermediate appellate courts lack authority to disqualify trial-court judges, but contends that intermediate appellate courts can address arguments that a trial-court judge's bias violated a litigant's right to a fundamentally fair proceeding.

{¶20} Initially, we note, and both parties recognize, that this court does not have the authority to disqualify a judge presiding over a permanent-custody hearing or any other proceeding.  R.C. 2701.03 governs the process that a party must follow when seeking to disqualify a judge:

> (A) If a judge of the court of common pleas allegedly is interested in a proceeding pending before the court, allegedly is related to or has a bias or prejudice for or against a party to a proceeding pending before the court or a party's counsel, or allegedly otherwise is disqualified to preside in a proceeding pending before the court, any party to the proceeding or the party's counsel may file an affidavit of

disqualification with the clerk of the supreme court in accordance with division (B) of this section.

(B) An affidavit of disqualification filed under section 2101.39, 2501.13, 2701.031, or 2743.041 of the Revised Code or division (A) of this section shall be filed with the clerk of the supreme court not less than seven calendar days before the day on which the next hearing in the proceeding is scheduled and shall include all of the following:

(1) The specific allegations on which the claim of interest, bias, prejudice, or disqualification is based and the facts to support each of those allegations or, in relation to an affidavit filed against a judge of a court of appeals, a specific allegation that the judge presided in the lower court in the same proceeding and the facts to support that allegation;

(2) The jurat of a notary public or another person authorized to administer oaths or affirmations;

(3) A certificate indicating that a copy of the affidavit has been served on the probate judge, judge of a court of appeals, judge of a court of common pleas, judge of a municipal or county court, or judge of the court of claims against whom the affidavit is filed and on all other parties or their counsel;

(4) The date of the next scheduled hearing in the proceeding or, if there is no hearing scheduled, a statement that there is no hearing scheduled.
        * * * *

{¶21} Thus, the statute requires a party who seeks to disqualify a judge to file a disqualification affidavit with the Ohio Supreme Court.  Furthermore, the Ohio Constitution "vests exclusive authority to pass on disqualification matters in the chief justice or her designee."  *State v. Osie*, 140 Ohio St.3d 131, 2014-Ohio-2966, 16 N.E.3d 588, ¶ 62, citing *Beer v. Griffith*, 54 Ohio St.2d 440, 441-442, 377 N.E.2d 775 (1978). Consequently, "any attempt to obtain a judge's recusal must be

made in consideration of the filing requirements of R.C. 2701.03 and other principles underlying" the disqualification process. *In re Navarre*, 156 Ohio St.3d 1208, 2019-Ohio-850, 124 N.E.3d 843, ¶ 5.

**{¶22}** For these reasons, intermediate appellate courts lack the "authority to pass upon disqualification or to void the judgment of the trial court upon that basis." *Beer*, 54 Ohio St.2d at 442; *accord Citibank, N.A. v. Hine*, 2019-Ohio-464, 130 N.E.3d 924, ¶ 126 (4th Dist.). Likewise, appellate courts lack jurisdiction to review a trial court's decision regarding a disqualification or recusal motion. *State ex rel. Hough v. Saffold*, 131 Ohio St.3d 54, 2012-Ohio-28, 960 N.E.2d 451, ¶ 2; *State v. Light*, 2023-Ohio-1187, 212 N.E.3d 1025, ¶ 58 (11th Dist.); *Brown v. Schmidt*, 4th Dist. Ross No. 15CA3523, 2016-Ohio-2864, ¶ 18. Accordingly, we lack authority to review the merits of the trial court's decision regarding appellant's disqualification motion.

**{¶23}** Appellant nevertheless contends that a permanent-custody hearing before a biased judge constitutes a structural error that violates her due-process right to a fundamentally fair proceeding. We point out, however, that at no point during the permanent-custody hearing did appellant argue that the trial

court acted in a biased manner.  Instead, she limited her argument to asserting that the trial-court judge should have determined, before the hearing began, that the prior representation created an appearance of impropriety.  Although we question whether appellant properly preserved this structural-error argument, we nonetheless will consider it.

**{¶24}** "A fair trial in a fair tribunal is a basic requirement of due process."  *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955); *accord Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 876, 129 S.Ct. 2252, 173 L.Ed.2d 1208 (2009).  For purposes of the due-process guarantee, fairness "requires the absence of actual bias in the trial of cases" and "a system of law [that] endeavor[s] to prevent even the probability of unfairness."  *Murchison*, 349 U.S. at 136. Thus, a "trial before a biased judge is fundamentally unfair and denies a defendant due process of law."  *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, 34, citing *Rose v. Clark*, 478 U.S. 570, 577, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986); *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242, 100 S.Ct. 1610, 64 L.Ed.2d 182 (1980) ("the Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases").  Accordingly, appellate courts may review

judicial-bias claims that allegedly violate a litigant's due-process rights. *State v. Loudermilk*, 2017-Ohio-7378, 96 N.E.3d 1037, ¶ 19 (1st Dist.); *King v. Divoky*, 9th Dist. Summit No. CV 29769, 2021-Ohio-1712, ¶ 45; *In re A.H.*, 8th Dist. Cuyahoga No. 108107, 2019-Ohio-4063, ¶ 65, fn. 10 (because permanent-custody proceedings must be fundamentally fair to comply with due process, parents are entitled to a permanent-custody hearing free from judicial bias and prejudice).

> Judicial bias has been described as "a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts."

*State v. Dean*, 127 Ohio St.3d 140, 2010-Ohio-5070, 937 N.E.2d 97, ¶ 47, quoting *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463, 58 O.O. 315, 132 N.E.2d 191 (1956), paragraph four of the syllabus; *accord Culp v. Olukoga*, 2013-Ohio-5211, 3 N.E.3d 724, ¶ 55 (4th Dist.). Judges are "presumed to follow the law and not to be biased, and the appearance of bias or prejudice must be compelling to overcome these presumptions." *In re Disqualification of George*, 100 Ohio St.3d 1241, 2003-Ohio-5489, 798 N.E.2d 23, ¶ 5. Consequently, "[a]llegations that are based solely on innuendo and speculation are insufficient to establish

bias or prejudice." *In re Disqualification of Pokorny*, 135 Ohio St.3d 1268, 2013-Ohio-915, 986 N.E.2d 993, ¶ 6. Moreover, opinions that a judge forms based upon "prior proceedings" do not demonstrate bias "unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed. 2d 474 (1994); *accord State v. Dean*, 127 Ohio St.3d 140, 2010-Ohio-5070, 937 N.E.2d 97, ¶ 49. We additionally observe that "'[b]ias against a party is difficult to question unless the judge specifically verbalizes personal bias or prejudice toward a party.'" *Culp v. Olukoga*, 2013-Ohio-5211, 3 N.E.3d 724, ¶ 55 (4th Dist.), quoting *Frank Novak & Sons, Inc. v. Brantley, Inc.*, 8th Dist. Cuyahoga No. 77823, 2001 WL 303716 (Mar. 29, 2001).

**{¶25}** In the case sub judice, appellant did not cite any part of the permanent-custody-hearing transcript to suggest the trial-court judge harbored hostile feelings or ill will towards her or any other party. Instead, appellant rests her argument upon bare allegations that the judge's previous representation renders the judge unable to act in a fundamentally fair manner when conducting the permanent-custody hearing and ruling on

appellee's motion. However, bare allegations of bias are insufficient to establish a due-process violation. *King v. Divoky,* 9th Dist. Summit No. CV 29769, 2021-Ohio-1712, ¶ 49; *Ramsey v. Ramsey*, 10th Dist. Franklin No. 13AP-840, 2014-Ohio-1921, ¶ 72*; see In re Disqualification of Blanchard*, 150 Ohio St.3d 1260, 2017-Ohio-5543, 80 N.E.3d 504, ¶ 5 ("parents' general and nonspecific claim" that judge who presided over parents' drug-court hearings and permanent-custody proceeding "'heard numerous prejudicial facts' about them in drug-court hearings" was not sufficient "to overcome the presumption of the judge's impartiality"). Furthermore, appellant did not point to anything in the record to establish that the judge's previous representation caused him to develop "deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555; *see generally Blanchard* at ¶ 4 ("the fact that the same judge presides over a parent's dependency case and her drug-court hearings does not, without more, mandate the judge's disqualification from one of those matters").

{¶26} We, therefore, after our review, do not agree with appellant that the permanent-custody proceeding was fundamentally unfair. Accordingly, based upon the foregoing reasons, we overrule appellant's sole assignment of error and

JACKSON, 23CA12

affirm the trial court's judgment.

                                        JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the appeal be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Jackson County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J. & Wilkin, J.: Concur in Judgment & Opinion

For the Court

BY:_____
                              Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.