[Cite as *State v. Tilton*, 2025-Ohio-5471.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| STATE OF OHIO,<br>CITY OF EASTLAKE,<br><br>                Plaintiff-Appellee,<br><br>- vs -<br><br>DENNIS GAIL TILTON,<br><br>                Defendant-Appellant. | **CASE NOS. 2025-L-016**<br>**2025-L-017**<br><br>Criminal Appeals from the<br>Willoughby Municipal Court<br><br><br>Trial Court Nos. 2024 TRC 04297<br>2024 CRB 02089 |

---

## OPINION AND JUDGMENT ENTRY

Decided: December 8, 2025
Judgment: Affirmed

---

*Jacqueline O'Donnell*, City of Eastlake Prosecutor, 35150 Lakeshore Boulevard, Eastlake, OH 44095 (For Plaintiff-Appellee).

*Dennis Gail Tilton*, pro se, 35673 West Island Drive, Eastlake, OH 44095 (Defendant-Appellant).

EUGENE A. LUCCI, J.

{¶1} Appellant, Dennis Gail Tilton, appeals, pro se, the judgments of the Willoughby Municipal Court, convicting him on one count of operating a vehicle while under the influence of alcohol and one count of resisting arrest. We affirm.

{¶2} On September 8, 2024, the Eastlake Police Department and Eastlake Fire Department responded to a two-car motor vehicle accident. During the on-scene investigation, officers determined appellant was at fault.

{¶3} Officer Justus McGrath stated he approached appellant and asked for his driver's license and proof of insurance. According to the officer, appellant asked, "why?"

At this point, Officer McGrath noticed an odor of an alcoholic beverage[1] coming from appellant's breath and appellant's eyes were glossy with dilated pupils. The officer also noted appellant was unusually argumentative.

{¶4} During their interaction, appellant admitted he was not in pain after the accident, and the officer did not notice any observable injuries. Officer McGrath, however, asked if appellant would be willing to have EMS personnel assess him. Appellant responded, "No, why would I need that?" The officer asked appellant if he would be willing to submit to standard field sobriety tests, but he refused.

{¶5} Officer McGrath asked appellant to step out of the vehicle, but appellant did not comply. Instead, he leaned over the center console and gripped the vehicle's steering wheel with his left hand. The officer again asked appellant to exit the vehicle, but he replied, "no."

{¶6} Officer McGrath attempted to remove appellant from the vehicle but was unable. He requested assistance from Lieutenant John McCauley who also asked appellant to exit the vehicle. When appellant did not comply, Lt. McCauley explained he would have to use force and unholstered his taser. Confronted with the taser, appellant exited the vehicle.

{¶7} After removing appellant from his vehicle, Lt. McCauley asked him three separate times to explain the circumstances that led to the accident. The first two

---

1. Throughout this opinion, we use the phrase "odor of an alcoholic beverage" rather than "odor of alcohol," which appears in portions of the trial testimony and record. While some witnesses did testify to smelling an "alcoholic beverage," others used the less precise term "alcohol." Officers cannot detect the odor of ethanol itself through smell; rather, they detect the characteristic odors of beer, wine, or distilled spirits, which arise from congeners and other volatile compounds in alcoholic beverages. We employ the more precise terminology consistently throughout this opinion, as it better reflects what witnesses actually perceive. This clarification does not affect our analysis of the evidence. *See, e.g.,* Transcript p. 188, line 5; p. 282, line 10; and p. 284, line 4.

Case Nos. 2025-L-016 and 2025-L-017

questions were ignored but after the third, the lieutenant stated appellant "used [an] expletive term saying that, you would have to tell me what happened." Lt. McCauley noticed a strong odor of an alcoholic beverage on appellant's breath and stated appellant's eyes were bloodshot.

{¶8} Kirk Lovick, a lieutenant with the Eastlake Fire Department, stated he approached appellant to determine whether he required medical assistance. Lt. Lovick, at the time of trial, had been a paramedic for 18 years. Lt. Lovick asked appellant if he was "okay," to which appellant responded in the affirmative. The lieutenant then checked the passenger of the other vehicle and determined that she was not physically injured.

{¶9} The lieutenant returned to speak with appellant, inquiring again about his physical condition and then asked where he was going and from where he had left. Appellant stated he was going home, but he told the lieutenant he did not have to explain where he was.

{¶10} During their interaction, Lt. Lovick stated appellant would not look directly at him and appellant smelled of an alcoholic beverage and had slurred, drawn-out speech. The lieutenant explained that he asked appellant questions to make sure, in his estimation, appellant did not have a head injury. During the second interaction, Lt. Lovick asked appellant whether he had been drinking. Appellant responded, "are you accusing me of being drunk" and then stated, "I don't have to tell you that."

{¶11} EMS officer/firefighter, Jason Gvora, an EMS worker for 23 years, also conversed with appellant at the scene. Officer Gvora observed that appellant was argumentative with him and refused to cooperate.

Case Nos. 2025-L-016 and 2025-L-017

{¶12} Officer Gvora asked appellant whether he was hurt or having any problems. Appellant remained silent. In order to determine whether appellant was "okay," Officer Gvora asked for appellant's name, date of birth, and address. Appellant did not respond to the initial questions, but appellant finally stated, "I'm not giving you my address." Officer Gvora noted that appellant was adamant in refusing to answer any questions and also refused an initial physical assessment.

{¶13} Officer Gvora conclusively stated that appellant denied any injuries and did not wish to be transported to the hospital. Appellant refused Officer Gvora's attempt to medically assess him, but, according to Officer Gvora's visual assessment, he did not "notice any sort of injury on his – from his torso on up, from what I could tell, to his head." Officer Gvora continued: "You also kind of look for things like guarding, or wincing, or something, if he's moving. . . . I didn't notice any of those things." The officer observed appellant was slurring his speech on the scene and he noticed "a very strong smell of alcohol" coming from the window of appellant's car.

{¶14} After being removed from his vehicle, Eastlake police attempted to put appellant into Officer McGrath's cruiser. Appellant refused to enter the cruiser on his own, and Officer McGrath and Lt. McCauley had to assist him. A catheter was recovered from appellant's vehicle which was transported with appellant to the Eastlake City Jail.

{¶15} Upon arrival at the jail, appellant stumbled exiting the cruiser. When appellant was initially processed for booking, an on-site officer asked for his name. Appellant replied his "name is on the court docket." Appellant was not initially booked at the jail because another male was being processed. Appellant was accordingly taken to a cell in the jail.

Case Nos. 2025-L-016 and 2025-L-017

{¶16} Officer McGrath attempted to advise appellant regarding the "BMV 2255" form, which prompts "an OVI suspect of his or her rights to either take a breath, urine, or blood sample." The officer was unable to fully read appellant his rights, pursuant to the form, due to his argumentativeness and continual interruptions.

{¶17} Officer McGrath noted that appellant's interruptions related to his request for his catheter. The officer retrieved the catheter approximately five to seven minutes after appellant's request and provided it to him. After providing appellant with the catheter, the officer testified he continued to assist a separate officer with the booking of another individual.

{¶18} Officer McGrath returned to appellant's cell and attempted to advise appellant of his rights pursuant to the BMV 2255 form. After offering the advisements twice, appellant repeatedly stated he did not "understand" and accused the officer of slurring *his* speech. Due to appellant's conduct and his consistent deflections, the officer concluded that appellant was refusing a breath test. Appellant continued with his obstreperous behavior.

{¶19} According to appellant, he had not had an alcoholic beverage on the day in question. Instead, he stated he was rebuilding a boat engine throughout the day which required the use of various chemicals that irritated the eyes. He also asserted he had not eaten since breakfast at 6:30 or 7:00 a.m. According to appellant and his wife, he has low blood sugar which causes irritability and confusion. Appellant produced no documentation or medical records of his condition or its symptoms or side effects.

{¶20} Appellant was charged with operating a vehicle while under the influence of alcohol, a misdemeanor of the first degree, in violation of R.C. 4511.19(A)(1)(a); one

Case Nos. 2025-L-016 and 2025-L-017

count of operating a vehicle while under the influence of alcohol and refusing to provide a breath/blood sample, a misdemeanor of the first degree, in violation of R.C. 4511.19(A)(2); and lanes of travel upon roadways, a minor misdemeanor, in violation of R.C. 4511.25(A). Appellant was later charged with one count of resisting arrest, a misdemeanor of the second degree, in violation of R.C. 2921.33(A). Appellant pleaded "not guilty," and the case proceeded to a jury trial. Appellant was found guilty on all charges.

{¶21} At sentencing, the trial court ordered the two OVI counts to merge for purposes of sentencing. On the surviving OVI charge, the trial court ordered appellant to serve 180 days in the Lake County Jail, 150 of which were suspended. On the resisting arrest charge, the trial court ordered appellant to serve 90 days in the Lake County Jail, 65 of which were suspended. The trial court ordered the sentences to run concurrently. Appellant was also placed on a period of community control for 18 months. Moreover, the court ordered restitution to the victim, who testified her insurance covered the damage to her vehicle. The prosecutor represented the victim's deductible was $500 and, as a result, the court awarded restitution in the amount of the victim's deductible. Neither defense counsel nor appellant contested the restitution order.

{¶22} Appellant filed a notice of appeal, but the transcripts of proceedings were not properly processed. After voluminous motion practice, the transcripts were finally made part of the record. Appellate briefs were filed prior to the transcripts being supplemented into the record. Accordingly, this court allowed supplemental briefing to permit additional argumentation in light of the inclusion of the transcripts in the record.[2]

---

2. Appellant's initial merit brief and supplemental brief are cryptically arranged such that this court is required to decipher or construe the exact nature of the arguments related to the errors he assigns. This

Case Nos. 2025-L-016 and 2025-L-017

In his initial brief, appellant assigns eight errors. We shall consider his first, second, and eighth assignments of error together. They provide:

> [1.] The trial court violated appellant's right to due process by certifying and transmitting a redacted and incomplete video exhibit, misrepresenting the record.
>
> [2.] The Willoughby Municipal Court and Eleventh District Court of Appeals obstructed Appellant's appellate rights by failing to certify a complete and accurate record, in violation of App.R. 9(E).
>
> [8.] The exclusion of transcript volumes, docket filings and affidavits submitted by the appellant obstructed meaningful appellate review, violating fundamental fairness as established by Griffen v. Illinois and Evitts v. Lucey.

{¶23} Under these assignments of error, appellant contends the record in his case is incomplete and/or inaccurate, and therefore his right to due process was violated. The certified record speaks for itself, and we discern nothing irregular.

{¶24} The record included a flash drive containing trial exhibits. The exhibits were recordings of the video at the police station where appellant was transferred after his arrest. The videos were played during trial, were not mislabeled, nor do they appear to be incomplete. The portions played at trial do not imply the exhibit was redacted. It only indicates the State utilized the evidence to establish its case. No objection was leveled, and we perceive no error in failing to object to this point.

{¶25} Furthermore, even though the transcripts were not originally filed with the record, this court, in a July 31, 2025 judgment, ordered the record to be supplemented

---

court diligently reviewed each brief and shall address the merits of each brief, but we also emphasize that appellant's stylistically strange and desultory method of argumentation makes it difficult to track his central themes on appeal. Still, we recognize appellant's supplemental brief generally tracks similar arguments made in his original brief. Therefore, any matters raised in the supplementary brief will be addressed under the relevant assigned errors in appellant's original merit brief.

Case Nos. 2025-L-016 and 2025-L-017

with the same. This court also afforded the parties to file supplemental briefs after the transcripts were filed.

{¶26} Appellant was convicted of OVI and resisting arrest. The officers' testimony was sufficient to provide evidence of both the OVI and the resisting-arrest charge. We discern no issues with the state of the record, and we consequently hold appellant was not deprived of due process.

{¶27} Appellant additionally asserts the transcript of the docket and journal entries are inaccurate. He asserts that because the docket entries listing "Police Report Filed" and "Personal Identifier Form" are observed on the docket, but not made part of the public docket, the reliability of the docket and the proceedings below must be called into question.

{¶28} Even assuming these filings are not part of the public record, appellant fails to argue or remotely substantiate how the absence of these filings contributed to any irregularity in the proceedings below. Appellant does not demonstrate how the alleged absences from the public docket affected his right to a fair trial or his right to due process. The record and docket are sufficient to apprise appellant of the charges, and he was afforded a full and fair trial. Appellant presented a defense recounting his various alleged medical issues and even testified on his own behalf. He was afforded full and fair constitutional due process. We discern no error.

{¶29} Appellant's first, second, and eighth assignments of error lack merit.

{¶30} Appellant's third assignment of error provides:

Case Nos. 2025-L-016 and 2025-L-017

{¶31} "The State committed prosecutorial misconduct by introducing prior convictions and mischaracterizing statutory advisements as Constitutional rights during opening statements."

{¶32} Appellant claims that the State engaged in prosecutorial misconduct by improperly referencing previous OVI convictions during its opening statement. We do not agree.

{¶33} "To address allegations of prosecutorial misconduct we 'must determine (1) whether the prosecutor's conduct was improper and (2) if so, whether it prejudicially affected [the defendant's] substantial rights.'" *State v. Light*, 2023-Ohio-1187, ¶ 46 (11th Dist.), quoting *State v. LaMar*, 2002-Ohio-2128, ¶ 121. "'The touchstone of the analysis "is the fairness of the trial, not the culpability of the prosecutor."'" *Light* at ¶ 46, quoting *State v. Garrett*, 2022-Ohio-4218, ¶ 144, quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982). "Thus, 'prosecutorial misconduct alone does not require a new trial' and '[t]he conduct of a prosecuting attorney during trial cannot be made a ground of error *unless* the conduct deprives defendant of a fair trial.'" (Emphasis in original.) *Light* at ¶ 46*,* quoting *State v. Hamad*, 2019-Ohio-2664, ¶ 123 (11th Dist.).

{¶34} "[T]he function of an opening statement by counsel in a jury trial is to inform the jury in a concise and orderly way of the nature of the case and the questions involved, and to outline the facts intended to be proved." *Maggio v. Cleveland*, 151 Ohio St. 136 (1949), paragraph one of the syllabus. "During opening statement, counsel is accorded latitude and allowed fair comment on the facts to be presented at trial." (Citations omitted.) *State v. Leonard*, 2004-Ohio-6235, ¶ 157. Because appellant's counsel failed to

Case Nos. 2025-L-016 and 2025-L-017

object during opening statements, he has forfeited all but plain error. *State v. Twyford*, 2002-Ohio-894, ¶ 68.

{¶35} R.C. 4511.19 provides:

> (A)(2) No person who, within twenty years of the conduct described in division (A)(2)(a) of this section, previously has been convicted of or pleaded guilty to a violation of this division, a violation of division (A)(1) of this section, or any other equivalent offense shall do both of the following:
>
> (a) Operate any vehicle, streetcar, or trackless trolley within this state while under the influence of alcohol, a drug of abuse, or a combination of them;
>
> (b) Subsequent to being arrested for operating the vehicle, streetcar, or trackless trolley as described in division (A)(2)(a) of this section, being asked by a law enforcement officer to submit to a chemical test or tests under section 4511.191 of the Revised Code, and being advised by the officer in accordance with section 4511.192 of the Revised Code of the consequences of the person's refusal or submission to the test or tests, refuse to submit to the test or tests.

{¶36} During opening, the prosecutor stated that the second OVI charge alleged appellant "operated his motor vehicle under the influence of alcohol, drug of abuse, or a combination of them, and he refused to submit to a breath, blood, or urine test when asked and advised of his rights, and he has a prior conviction within 20 years." This statement simply set forth the elements of the OVI charge. The State did not belabor, dwell upon, overdramatize, or overelaborate on the point. The prior conviction was an element of the OVI offense that the State was required to prove. We discern no error, let alone plain error.

{¶37} Moreover, as an adjunct to this point, appellant claims, in his supplemental brief that the trial court "misused" a joint stipulation agreed upon by the parties. On day two of the trial, the parties entered the following stipulation:

Case Nos. 2025-L-016 and 2025-L-017

We, Defendant Dennis G. Tilton and the attorneys for the respective parties, do hereby stipulate to the following without the necessity of testimony or other evidentiary documentation:

"That the Defendant, within twenty years of the offenses charged, has previously been convicted of or pleaded guilty to the offense of Operating a Vehicle While Under the Influence of Alcohol, Drugs, or a Combination of Them."

{¶38} The trial court noted that the stipulation was signed by the parties and neither defense counsel nor appellant took issue with this point. Appellant therefore agreed to stipulate to the element of a "prior conviction" thereby relieving the State of its burden of production on this point. Even though the State mentioned the element in opening, it is well-established that opening statements are not evidence. *See, e.g., State v. Graham*, 2020-Ohio-6700, ¶ 74. The "prior conviction" element was not discussed during testimony, and the stipulation relieved the State of its burden of producing such testimony.

{¶39} In his supplemental brief, appellant argues, however, the joint stipulation was accepted despite its execution occurring "off record [and in] the lobby . . . under coercion and duress." Whether appellant was pressured into the stipulation is not a matter for this court to decide on direct appeal. That is a matter dehors the record and can only be raised in a petition for post-conviction relief. *See State v. Moon*, 2014-Ohio-108, ¶ 13 (8th Dist.), citing *State v. Cooperrider*, 4 Ohio St.3d 226, 228-229 (1983) (a petition for postconviction relief, not a direct appeal, is the appropriate vehicle for asserting a claim relating to evidence dehors the record). We maintain there was no error.

{¶40} Appellant's third assignment of error lacks merit.

{¶41} Appellant's fourth assignment of error provides:

Case Nos. 2025-L-016 and 2025-L-017

{¶42} "Trial counsel rendered ineffective assistance by failing to object to unauthenticated evidence, suppress redacted exhibits, and assert appellant's medical and constitutional defenses."

{¶43} To demonstrate ineffective assistance of counsel, a defendant must prove "(1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." *State v. Madrigal*, 2000-Ohio-448, ¶ 49, citing *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984). "To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph three of the syllabus.

{¶44} Appellant contends that his trial counsel was ineffective for failing to object to evidence, suppress exhibits, and assert certain medical defenses. We do not agree.

{¶45} At trial, the trial court admitted the State's exhibits. One exhibit was an aerial view of the intersection where the crash occurred. The other exhibit included appellant's booking video.

{¶46} With respect to the photo, appellant contends it was improperly admitted because it is unclear when the photo was taken, who took the photo, or whether it accurately portrayed the scene at the time of the accident. The photo was introduced as a reference tool. Counsel's failure to object is not error, and we fail to see how counsel's lack of objection created a reasonable probability that the outcome of the trial would have been different.

Case Nos. 2025-L-016 and 2025-L-017

{¶47} Further, the booking video was introduced to demonstrate appellant's uncooperativeness and unusual behavior, likely to supplement the evidence of the OVI and resisting-arrest charges. The officers testified to appellant's recalcitrant attitude during their interactions with him at the scene of the accident. His defiance and unwillingness to engage or cooperate with officers was manifest. We fail to see how the suppression of the booking video would have any likelihood of changing the outcome.

{¶48} Also, in any event, defense counsel could have requested that the full video be played to the jury. He did not, but we maintain such a decision is a matter of trial strategy. "'[D]ebatable trial tactics do not establish ineffective assistance of counsel.'" *State v. Johnson,* 2010-Ohio-3046, ¶ 37 (11th Dist.), quoting *State v. Hoffner*, 2004-Ohio-3430, ¶ 45. Here, counsel may have reasonably concluded that elongating the proceedings may have frustrated jurors and distracted them from appellant's primary defense. We see no error.

{¶49} Finally, trial counsel addressed appellant's various medical issues throughout the trial to defend against the charges. Counsel repeatedly, particularly with the EMS witnesses, questioned whether appellant's various medical conditions, e.g., the low-blood sugar or his issue with a catheter, could have contributed to or created the confusion and behavior appellant exhibited at the accident scene. Moreover, appellant, and his wife, testified on his own behalf and articulated the symptoms he might experience if his blood sugar was low. Counsel effectively brought to light appellant's various medical conditions and was not ineffective for further pursuing these defenses.

{¶50} Appellant's fourth assignment of error lacks merit.

{¶51} Appellant's fifth assignment of error provides:

Case Nos. 2025-L-016 and 2025-L-017

{¶52} "The trial court admitted speculative, unauthenticated testimony regarding an alleged crash scene through Exhibit 1 and lay witnesses violating Evid.R. 901 and 702."

{¶53} As noted above, State's Exhibit 1 was identified as an aerial photo depicting the intersection where the accident occurred. Evid.R. 901(A) provides: "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." "In order to be admissible, the State was only required to present evidence sufficient to lay a foundation and to connect the photographs with the relevant facts of the case." *State v. Miller*, 2015-Ohio-956, ¶ 21 (11th Dist.), citing *State v. Brooks,* 101 Ohio App.3d 260, 264 (2d Dist. 1995), citing 2 Weissenberger, *Ohio Evidence*, § 901.16, at 13-14 (Rev. 1988). "'This low threshold standard does not require *conclusive* proof of authenticity, but only sufficient foundational evidence for the trier of fact to conclude that the document is what its proponent claims it to be.'" (Emphasis in original.) *Miller* at ¶ 21, quoting *State v. Easter,* 75 Ohio App.3d 22, 25 (4th Dist. 1991).

{¶54} The photograph was admitted without objection. The photograph was identified by the victim during her testimony as well as during a witness's testimony who observed the accident and called 911. A foundation for the introduction was provided, and the photo was connected to the relevant facts of the case. We see no error in the trial court's admission of the photograph.

{¶55} Appellant's fifth assignment of error lacks merit.

{¶56} Appellant's sixth assigned error provides:

Case Nos. 2025-L-016 and 2025-L-017

{¶57} "The State and the trial court suppressed or failed to preserve exculpatory material, including report 24-01444 and the video arraignment file, constituting violations of Brady v. Maryland."

{¶58} "[A] prosecutor violates due process when he (1) suppresses evidence (2) that is favorable to the defendant, when that evidence (3) is material to guilt or innocence." *United States v. Olsen,* 737 F.3d 625, 628 (9th Cir. 2013) (Kozinski, C.J., dissenting), citing *Brady v. Maryland,* 373 U.S. 83, 87 (1963).

{¶59} Appellant contends the State suppressed material evidence. There is nothing in the record before the court indicating that the State withheld any evidence, let alone exculpatory evidence. For all we know, "report 24-01444" and the "video arraignment file" were available to appellant during discovery, but counsel simply determined the "evidence" was not useful to appellant's defense. Such a determination would be within the realm of reasonable trial strategy, especially where appellant's trial defense leaned heavily upon his specific and unique medical condition which requires him to use a catheter and allegedly caused him irritability and confusion. Considering this point, it is additionally unclear how "report 24-01444" or the "video arraignment file" would be material to appellant's "innocence." Appellant fails to create a reasonable nexus between the evidence at issue and the alleged *Brady* violation(s).

{¶60} Appellant's sixth assignment of error lacks merit.

{¶61} Appellant's seventh assigned error asserts:

{¶62} "The cumulative denial of ADA accommodations, medical relief and appellate access constitutes a systematic due process violation under the Fourteenth Amendment and 42 U.S.C. § 12132."

{¶63} Appellant has a medical condition requiring the use of a catheter, which was recovered on his person following his arrest. The catheter was returned to him shortly after arriving at the Eastlake Police Department. Furthermore, at trial, the trial court was conscientious of appellant's potential medical problems and allowed him to take a break during his testimony. During trial, the following exchange occurred:

The Court: . . . Now, do you need a break?

The Defendant: It would be great if the air conditioning could be turned off.

The Court: Okay. Well, unfortunately, everyone in this building has already gotten - - has had some experience now with the heating and cooling system here. As much as I would like to control that, I simply cannot. So if you need a break - - [defense counsel], would you like to take that now?

[Defense counsel]: Yes, Your Honor, if we could take a break.

The Court: Okay. So, ladies and gentlemen, we are going to take a break. If others are uncomfortable with the temperature, I do apologize. I can't control the way the heating and cooling is set up here. We really do our best with that. But we will break.

. . .

Okay, we're back on the record. We're outside the presence of the jury. The witness, the defendant, Mr. Tilton, while in the box, indicated to the Court - - looked at the Court and asked for a break saying that he hadn't eaten anything today. And he has just completed, on direct testimony, testifying to numerous self-disclosed health issues. We don't have any information on that other than what he has disclosed here.

So, I started to – I excused the jury. We started to break. And now he is shaking, indicating that he's cold. So, we've now called the Willoughby Fire Department to have him checked out.

. . .

> We're on the record. The parties are present in the courtroom. The defendant, Mr. Tilton, is in the box. We took a recess because Mr. Tilton was not feeling well. We're outside the presence of the jury. We called the Willoughby EMS. They have since come to the courtroom. They have checked on Mr. Tilton. I have been advised that he as requested to not be transported.
>
> . . .
>
> Okay, we will continue. Mr. Tilton is still in the box. The temperature situation we've discussed. It's outside of the Court's control, but now he has on some gloves and his coat, and we've offered a heater. And if that changes, he will let us know.

{¶64} Considering the foregoing, we decline to conclude that police, other first responders, or the trial court ignored or disregarded appellant's medical issues. He was treated reasonably and fairly. We accordingly see no error, let alone cumulative error, in the manner in which he was treated pre-arrest, post-arrest, or during his jury trial.

{¶65} Next, in his supplemental brief, appellant additionally takes issue with the trial court's management of his late arrival to his trial and its subsequent inquiry into his alleged hearing (auditory) issues. The trial was set for 8:00 a.m. and appellant did not arrive until nearly 9:00 a.m. Upon appellant's arrival, the court asked him several questions, and appellant appeared to be hard of hearing. The court asked appellant if he could sufficiently hear, and appellant responded, "I have tinnitus." The court asked appellant if he required a hearing aid, but appellant stated, "That doesn't help." Appellant eventually indicated he could hear fine.

{¶66} The court asked why appellant was nearly an hour late for his trial, to which he responded: "I've been in bed with what's called petite pneumonia. It strikes me unknowingly in cold weather sometimes. It's been in my past since 1974 - - no, I'm sorry,

'76. I've had about six bouts of it. And about the only thing to get rid of it is bedrest." The court asked appellant if he had seen a physician in the last 48 hours. Appellant stated "No, ma'am, I have not. I've been in bed." The court confirmed that no one has diagnosed him recently with his claimed medical problem and admonished him that 50-plus people have been waiting to serve on the jury for his trial and that the court was not comfortable with keeping these people waiting. Appellant did not respond.

{¶67} It is unclear how appellant was mistreated, or his alleged medical condition(s) were ignored by the court. The court took issue with appellant's tardiness and explained that it was unacceptable. We discern no error in the way the court managed this situation.

{¶68} In addition, appellant, in his supplemental brief, argues the trial court's supersedeas bond exceeded the $500 restitution order and "obstructed his medical care at the Cleveland Clinic." We observe no relationship between the bond order and the restitution order to which the victim stated she had to pay pursuant to her insurance premium.

{¶69} Appellant further takes issue with the "disproportionate" restitution order by the trial court. The victim testified that she was insured, and she was required to pay her premium. The court ordered $500 in restitution, which represented the victim's premium she was required to pay. No objection was made to this point.

{¶70} "A defendant who does not dispute an amount of restitution, request a hearing, or otherwise object waives all but plain error in regards to the order of restitution." *State v. Snowden*, 2019-Ohio-3006, ¶ 88 (2d Dist.), citing *State v. Woods*, 2016-Ohio-1103, ¶ 12 (2d Dist.). *See also State v. Floyd*, 2020-Ohio-4655, ¶ 13 (10th

Case Nos. 2025-L-016 and 2025-L-017

Dist.). "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶71} We find no plain error in the trial court's award of the victim's insurance premium as restitution.

{¶72} Finally, appellant, in his supplemental brief, claims, repeatedly, he was subjected to poor and unreasonable treatment by police and the trial court. Appellant argues he "endured trial and sentencing while incapacitated – visibly ill, checked by EMS, denied food, [and] confined without medical relief." These representations are belied by the record.

{¶73} The trial court *ensured* appellant was comfortable and medically capable of proceeding with the trial. Any argument regarding his dissatisfaction with the court proceedings is unavailing. A court proceeding is not a trip to the "spa." One is in court to answer a criminal charge (or charges). To the extent appellant was incapable of going forward, his concerns were adequately and reasonably addressed. If appellant did not have food prior to the proceedings, that is not the fault of the court, especially given appellant's continuous claim that his low blood sugar affects his temperament. Any issue, in this respect, appellant was aware of and therefore invited. The court in this case assisted appellant as much as might be deemed reasonably possible. His claims to the contrary are without merit.

{¶74} Appellant's seventh assignment of error lacks merit.

{¶75} While we appreciate appellant's rigor and tenacity in challenging his convictions on appeal, the properly admitted evidence in this matter supports the jury's

Case Nos. 2025-L-016 and 2025-L-017

verdict beyond a reasonable doubt. A defendant, including appellant, is afforded all presumptions in favor of his or her innocence at the trial level. Appellant takes issue with the State's witnesses and its evidence. His challenges are arguably reasonable, especially in light of trial counsel's reasonable and fair Crim.R. 29 argument to dismiss the charges at the close of the State's evidence. Nevertheless, the evidence was sufficient and consistent with the manifest weight of the evidence. No evidence was submitted that could be reasonably construed as prejudicial to appellant's defense. Further, nothing at sentencing was irregular or unsupported by the evidence.

{¶76} The Willoughby Municipal Court's judgments are affirmed.

MATT LYNCH, J.,

SCOTT LYNCH, J.,

concur.

Case Nos. 2025-L-016 and 2025-L-017

## JUDGMENT ENTRY

For the reasons stated in the opinion of this court, appellant's assignments of error lack merit. It is the judgment and order of this court that the judgments of the Willoughby Municipal Court are affirmed.

Costs to be taxed against appellant.

JUDGE EUGENE A. LUCCI

JUDGE MATT LYNCH,
concurs

JUDGE SCOTT LYNCH,
concurs

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case Nos. 2025-L-016 and 2025-L-017